Mr. Taylor moved a few days ago, on the Court granting the continuance, to be at liberty to enlarge the demise so as to extend it beyond the next term, or to the time when a trial will probably be had; and the Court were about to allow the motion, when the counsel for the defendant insisted that the enlargement moved for could not be admitted, and prayed time for a few days to prepare himself to show it. *Page 255 
Whereupon the Court delayed a decision upon the motion for a few days; and now on the day appointed for the further consideration of Mr. Taylor's motion, Moore, counsel for the defendant, showed cause against it.
E contra, argued by Mr. Taylor.
The history of amendments at the common law, alluded to by ChiefJustice Holt in one of the Reports cited on the other side, proves the influence a particular cause may have in forming the decisions of the day. He refused a motion not because it was unreasonable, but as it tended to the alteration of a record, and "because he had no mind to build a new clock-house." Edward I, after he had been some time in the French dominions, returned to England and, as it is supposed, wanting money, found it convenient to prosecute his judges. His pretext was that they had altered their records. They were ruined by the enormous fines set upon them, and Chief Justice Hingham among the rest; and it was afterwards a tradition that with this fine a clock-house was built, from which the clock might be heard into Westminster (328) Hall. This gave such a shock to the succeeding judges that though formerly the judges would alter their records so as to make them speak truth, they would now no longer touch a record after it was made up; and this rule, really contrary to the common law, was so strictly adhered to that it has been the work of many Parliaments and ages, by a great variety of statutes allowing amendments and authorizing judges to get over nice exceptions, to get the better of it, although it had its origin not in any principle of the common law, but in the arbitrary exercise of royal power, actuated by the avidity of the princely office. Can any example more strongly evince the propriety of reexamining former decisions, and trying them by common-law maxims? Can any example more satisfactorily prove that the modern decisions, where variant from the old, are worthy of our consideration? Neither the old nor the modern decisions are the very common law itself; they only profess to ascertain what it is. It is more reasonable to be governed by decisions made upon an examination of all the prior cases, and of their reasons and grounds, compared with the maxims of the common law, the general principles of reason and justice, and assisted with all the new lights that are furnished in modern times, than adhere implicitly to the old decisions, as if they were the very common law itself — although, in fact, they are directly opposed to it.
Formerly, demises in declarations in ejectment were enlarged only by consent, and not otherwise. A different practice began *Page 256 
to prevail in the English courts in the latter part of the reign of George II, and hath continued hitherto. It very probably prevailed here, also. The first instance was in 21 George II., reported in Strange, 1272. A distinction was made about this time between the cases where judgment had been given and where not. If it had been given, the record was made up and could not be altered. Afterwards, a distinction was made between the cases where the motion to enlarge was made pending the ejectment, and where after. In the latter case it could not be altered, for that would be to make a new term, and not to enlarge the old. These distinctions seem to have been adopted to get at an (330) amendment without infringing former decisions, some of which had decided that the enlargement could not be made where the motion was after the term expired. However, since these distinctions prevailed, there have been other decisions in favor of enlarging the demise without regarding the former rules. In the first of George III., the demise was laid to be in 33 George III. After verdict, the Court, upon argument, allowed the demise to be amended. There the term was not commenced at the time of the trial. There was another case, Cowp., 841, where the demise was enlarged after judgment. In 14 George III., the term was expired and allowed to be enlarged. 2 Bl. Rep., 940, 941. The Court there said an ejectment is the creature of the Court, and open to every equitable regulation for expediting the true justice of the case. These decisions were declarations of what the common law was long before our Revolution. They were most probably received here, and if only such decisions as took place before the Revolution are evidence of the common law under the act of 1778, still the amendment may be made. It seems highly proper, upon the reason of the thing, that amendments of this kind should be made. The demise is but a fiction; it is not real. The only question in ejectment is, Has the lessor such a title as can enable him to make such a lease as that stated in the declaration? If he has, he ought to recover. The term of the demise is immaterial. Whether the demise be for a longer or a shorter time, the party's title is in no wise altered or affected by that circumstance; and if in general such alterations ought to be made for expediting justice, there are very ample reasons why it should be made in the case now before the Court. This demise was laid to be of five years continuance, and by the delays of the Court that time is expired, or is likely to expire before the cause can be tried. The plaintiff had reason to expect his cause would be tried before the expiration of five years. He has been in no fault. It is not owing to him that the cause has not been tried. Shall he then be *Page 257 
turned round to begin his cause again? Surely, it would be the excess of injustice to say so. There are cases enough to warrant the amendment, and it will operate no hardship upon any one. Wherefore, let the demise be enlarged; and it was enlarged.
See Faircloth v. Ingram, post, 501
Cited: Baxter v. Baxter, 48 N.C. 305.
(331)